# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  25-mj-1034 |
| the dark blue 2018 Dodge Charger Hellcat SRT bearing VIN number 2C3CDXL96JH272235 | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference

located in the ___Eastern___ District of ___Pennsylvania___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2119 | Carjacking |
| 18 U.S.C. § 924(c) | Brandishing a firearm during a crime of violence |
| 18 U.S.C. § 2 | aiding and abetting |

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ S/A Ryan Wills
*Applicant's signature*

Ryan Wills, Special Agent, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: _____

/s/ Craig M. Straw 5-16-2025
*Judge's signature*

City and state: Philadelphia, PA

Honorable Craig M. Straw, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE DARK BLUE, 2018, DODGE CHARGER HELLCAT SRT BEARING VIN NUMBER 2C3CDXL96JH272235 | Case No. 25-mj-1034 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Ryan Wills, being first duly sworn, hereby depose and state a follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the search for and seizure of electronically stored information, as particularly described in Attachment B, within the dark blue 2018 Dodge Charger Hellcat SRT, bearing VIN number 2C3CDXL96JH272235, (the "Vehicle"), a description of which is contained in Attachment A.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since July 2020. Prior to ATF, I worked as a federal police officer for the Supreme Court of the United States for over four years. I am currently assigned to ATF Philadelphia Group VII, which is a Firearms Enforcement Group, whose primary responsibilities include investigating violent crime through the interdiction of firearms being possessed or used by violent criminals in Philadelphia. I have successfully completed the Federal Law Enforcement Training Center's Criminal Investigator Training Program as well as ATF's Special Agent Basic Training. This includes training in investigating technological devices,

electronic accounts, and ways in which criminals use electronic communications (e.g., telephones, e-mail, social media, and online communications platforms) to further criminal activity. As a result of my training and experience, as well as the training and experience of other investigators, I am familiar with investigations involving violations of federal criminal laws and executing federal search warrants and seizing evidence in accordance with probable cause.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, sections 2119 (carjacking), 924(c)(1)(A)(ii) (brandishing a firearm during a crime of violence), and 2 (aiding and abetting), have been committed by Jabbar BURK and others known and unknown. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. My basis for believing that evidence is located within the Vehicle, including the infotainment and telematics systems, is as follows:

6. On April 20, 2025, at approximately 2:57 AM, around the time of a "car meet" in the area, victims J.L. and J.D.[1] were carjacked at gun point of C.C.'s vehicle, a 2018 dark blue

---

[1] J.L. and J.D. are people who are known to law enforcement and have been interviewed in connection with this investigation. Each is providing information to law enforcement as a victim/witness to a crime and not in anticipation of receiving financial compensation or consideration in connection with any criminal matter. The information provided is believed to be truthful and credible as aspects have been independently verified by this investigation.

Dodge Charger Hellcat SRT (bearing PA registration MNC8269, and VIN: 2C3CDXL96JH272235). J.L. stated he pulled over with J.D. to the Cloud Nine Smoke Shop located at 2016 Cottman Ave, Philadelphia, PA. J.D. got out and went into the smoke shop to buy a couple of drinks. J.D. then got back into the Charger when a white Dodge Charger pulled up behind them and a white SUV pulled up in front of them, blocking their vehicle in. Multiple black males got out of the white SUV with handguns and pointed them at J.L. and J.D. demanding their vehicle. The offenders took off with the blue Dodge Charger, with the actors now driving the white Charger, the blue Charger and the white SUV. Inside the victim's Charger were their phones and wallets. The vehicle had an Apple air tag inside it and immediate attempts to track the vehicle led to multiple notifications in the north and east sections of Philadelphia. The Philadelphia Police Department (PPD) recovered video from the smoke shop which shows the carjacking in its entirety. The white SUV was identified as a white Jeep Grand Cherokee with tinted windows.

7. On April 21, 2025, PPD Detective Gomes conducted a review of Real Time Crime Cameras (RTCC) and Automatic License Plate Reader (ALPR) cameras to determine if there were any readings of the stolen vehicle. Numerous readings showed the tag for the blue 2018 Dodge Charger Hellcat (PA MNC8269) now displayed on a white Jeep Grand Cherokee being operated in the area of 7th and Huntington Streets, Philadelphia, at 3:45 PM on April 21, 2025. Additionally, the Jeep was observed being operated in the same area accompanied by a blue Dodge Charger now displaying PA tag LKX8494. This information was relayed to patrol officers via police radio by PPD Detective Cole who requested units to survey the area.

8. At approximately 5:30 PM, PPD officers observed a white Jeep Grand Cherokee bearing PA tag MNC8269 being operated in the area of 6th and Cumberland Streets,

Philadelphia. As officers attempted to stop the vehicle for investigation, the vehicle fled at a high rate of speed and engaged in numerous motor vehicle code violations in an attempt to elude officers. PPD officers observed the Jeep crash into another motorist at 2300 Huntington Park Ave., disabling the Jeep. PPD officers observed the operator and sole occupant of the Jeep, later identified as Jabbar BURK, flee on foot towards 23rd and Venango Streets, Philadelphia, where he was apprehended by officers. As the Jeep was being secured for further investigation, the officers observed a black handgun with an extended magazine in the front passenger seat in plain view (Glock 19, serial number BZNC615). Further investigation of the white Jeep showed it listed in stolen status. Two cell phones were also recovered from the vehicle.

9. On April 25, 2025, the blue Charger Hellcat, the Vehicle, was located in Delaware County, PA. The vehicle was subsequently photographed and processed by PPD for fingerprints. It was then returned to the registered owner, I.T.

10. On May 15, 2025, I made contact with I.T.[2] who indicated that the Vehicle was no longer in her possession as it had been declared a "total loss" by her insurance company. I was able to determine the physical location of the Vehicle, identified as I-95 Collision Center, located at 7360 Wissinoming Street in Philadelphia, which is where the vehicle is currently located.

11. Based on a visual inspection of the Vehicle, it appears to contain an infotainment and telematics system that contains, at a minimum, information associated with various cell

---

[2] I.T. is a person who is known to law enforcement and has been interviewed in connection with this investigation. I.T. is providing information to law enforcement as a witness and not in anticipation of receiving financial compensation or consideration in connection with any criminal matter. The information provided is believed to be truthful and credible as aspects have been independently verified by this investigation.

phones that have previously connected with the Vehicle. I know based on my training, knowledge, and experience, that when an operator of a vehicle connects his/her cellular device to the vehicle, that vehicle can retain the phone's information on its internal computer system. I also know that vehicles, including the subject Vehicle, often retain GPS location information for a period of time. Such information related to connected device information and historical GPS data could be critical to this investigation as it would help demonstrate the occupants of the vehicle and the location of where the Vehicle traveled during the relevant time period, thereby enabling law enforcement to confirm the actors involved in the carjacking. On May 15, 2025, I performed an initial inspection of the Vehicle within the 7360 Wissinoming lot and observed that the display indicated that a device labelled as "Jabbar's iPhone" had been connected to the Vehicle at some prior point in time. Based upon my familiarity with this investigation, as well as from interviewing I.T., I believe that "Jabbar's iPhone" was likely a device used and controlled by Jabbar Burk who did not have permission from I.T. to use the Vehicle and is a suspect in the above noted carjacking. I therefore believe that a forensic examination of the Vehicle's Infotainment system will reveal additional evidence relating to the carjacking and assist in identifying the perpetrators of the crime.

12.     The Vehicle is a 2018 Dodge Charger Hellcat SRT and it is equipped with infotainment and telematics systems. As described in detail below, electronic data, information, and images stored on these systems may be successfully extracted from the Vehicle using proprietary hardware and software. Philadelphia Police Department Detective John Cole confirmed the vehicle is compatible for a Berla forensic examination.

## TECHNICAL BACKGROUND REGARDING THE VEHICLE AND ITS INFOTAINMENT AND TELEMATICS SYSTEMS

13. Based on my training and experience, as well as discussions with other experienced law enforcement officers and witnesses, I have learned that:

   a. Many modern motor vehicles are equipped with sensors, cameras,[3] transmitters, and electronic control units (ECUs)[4] to monitor and manage vehicle operations, track vehicle movement, and exchange information with other vehicles and infrastructure.[5] These systems also enable motor vehicles to interface with various types of mobile devices to facilitate the use of applications, including third-party navigation, wireless telephone, multimedia streaming, and the like. To perform

---

[3] As of 2018, the US National Highway Safety Transportation Agency requires new motor vehicles sold in the United States to have backup cameras installed by the manufacturer.

[4] "ECU" is a generic term applied to any embedded computer that controls one or more electrical systems within a vehicle. ECUs are typically installed in a vehicle by the original equipment manufacturer during the manufacturing process. There are many types of ECUs, and as vehicles have more features each year, the number of ECUs in each motor vehicle increases. Newer motor vehicles can integrate as many as 150 ECUs, ensuring, in theory, that each part of the motor vehicle is running properly. Some examples of common ECUs include the Engine Control Module, Transmission Control Module, Brake Control Module, and Suspension Control Module, as well as the Telematics Control Unit and Infotainment Control Unit.

[5] The infotainment and telematics systems in motor vehicles are not the same as "black box" recorders. Black box recorders are called event data recorders (EDRs) or crash data recorders. These black box recorders can record vehicle speed, engine speed, steering angle, throttle position, braking status, force of impact, seatbelt status, and airbag deployment. In 2006, the US National Highway Traffic Safety Administration (NHTSA) adopted regulations requiring EDRs to uniformly collect certain crash data to assist crash investigators with accident reconstruction efforts. In 2012, NHTSA proposed requiring manufacturers to install EDRs in all new cars and trucks, but in 2019, the NHTSA withdrew the proposal because automakers have voluntarily installed the devices in nearly all vehicles.

these computing functions, modern motor vehicles collect, process, and store significant volumes of data.

b. Two commonly installed ECUs within motor vehicles are infotainment and telematics systems—sometimes referred to as the Telematics Control Unit and the Infotainment Control Unit. These systems typically retain large amounts of user data within the vehicle.

c. A vehicle's infotainment system combines hardware and software to provide entertainment features. Many infotainment systems allow drivers and passengers to connect their handheld electronic devices to the vehicle. When connected, the driver and/or passengers may gain access to, for example, Global Positioning System (GPS) navigation, video players, music streaming, voice calling, texting, and traffic data. Many systems enable talking hands-free with Bluetooth connectivity, listening to music, watching videos, or pulling up a mapped route to a destination. Many of these features are accessible via the (usually interactive) console located on the front dashboard of the vehicle.

d. A vehicle's telematics system typically collects and stores diagnostic data from various systems (other ECUs) within the vehicle, including historical navigation points, speed, and event data. Historical event data may include information regarding when the car's trunk, doors, and windows opened and closed, when headlights turned on and off, and when gears changed or brakes were engaged.

e. The main difference between the infotainment and telematics systems is that the infotainment system is about entertainment for the occupants of the vehicle, and

the telematics system is for collecting and reporting (transmitting) information—such as vehicle use data, maintenance requirements, and automotive servicing—about the vehicle. Typical telematics data may include turn-by-turn navigation, remote access, emergency calling, and maintenance notifications. Examples of vehicle telematics systems include General Motors' OnStar, BMW's "Assist," and Mercedes' "mbrace." Some of these systems are integrated multimedia navigation and telematics systems in one (combined infotainment/telematics systems), like Toyota's "Entune" and Ford's "Sync."

f.  The data generated, collected, transmitted, and retained by motor vehicles can provide valuable information in law enforcement investigations of crimes. For example, many infotainment systems support the importation of content and other data information from a particular user's mobile device. Such data may include content that may provide attribution to particular user(s), including mobile device identifiers, wireless telephone numbers, user account details, passwords, user voice profiles, contact lists, call logs, text messages, pictures, e-mail, videos, web history, GPS coordinates, and other historical navigation information.

g.  I am aware that the computers (ECUs) within many motor vehicles store data for prolonged periods of time. Furthermore, even after a previously-connected mobile device is removed from the physical vehicle, data may remain within the digital storage of the system. Such stored data can be used to identify locations, victims, witnesses, associates, and co-conspirators and may include communications and images of criminal activity. In sum, a forensic examination of a motor vehicle's infotainment and telematics systems may reveal the vehicle's GPS location

information, movements, operations, and user data at critical moments before, during, and after the commission of a crime.

h. As previously stated, the Vehicle is a dark blue 2018 Dodge Charger Hellcat SRT, bearing VIN number 2C3CDXL96JH272235, and is located at 7360 Wissinoming Street Philadelphia, PA. The Vehicle was stolen by multiple yet identified actors on April 20, 2025 at point of gun. The vehicle was later recovered on April 25, 2025. The Vehicle likely contains material information including but not limited to GPS data and connected device information related to the carjacking under investigation. To complete a forensic extraction, law enforcement may need to relocate the vehicle to 4298 Macalester Street, Philadelphia, the Philadelphia Police Department's tow lot.

i. It may also be necessary, temporarily, to remove trim and other components of the Vehicle to access the information subject to search. It may also be necessary to repair the device, replace the screen, reconnect wires, and replace batteries. It may be necessary to employ advanced forensic processes to bypass locked display screens and other data access restrictions. Advanced processes may include potentially destructive forensic techniques used to remove memory chips from computers and other electronic storage containers that may be found within the Vehicle. In the event that potentially destructive processes are required to perform this extraction, parts of the Vehicle may be destroyed and rendered useless.

j. Furthermore, it may be necessary to return to the Vehicle and reconnect the infotainment and telematics systems to the Vehicle's power source to perform the

extraction using forensic software. This is because there are various computer networks working simultaneously when a vehicle is powered on, and in some vehicles, the infotainment and telematics systems require the other networks to work in tandem to complete the data extraction.

k.  The requested warrant authorizes a later review of the media and information seized or copied from the Vehicle, which review may continue past the date required for execution of the warrant.

## **CONCLUSION**

14.  I submit that this affidavit supports probable cause for a warrant authorizing the extraction and forensic examination of electronically stored information within the Vehicle (as described in Attachment A) to seize the data described in Attachment B.

Respectfully submitted,

*/s/ Ryan Wills*
Ryan Wills
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Subscribed and sworn to before me telephonically
on May 16, 2025:

/s/ Craig M. Straw 5-16-2025
HON. CRAIG M. STRAW
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is the dark blue 2018 Dodge Charger Hellcat SRT, bearing VIN number 2C3CDXL96JH272235, ("the Vehicle").

This warrant authorizes, *inter alia*, the forensic examination of the Vehicle's infotainment and telematics systems for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.	All electronically stored information, on the Vehicle's infotainment and telematics systems described in Attachment A, that involves Jabar BURK and other unidentified actors and relates to violations of Title 18, United States Code, sections 2119 (carjacking), 924(c)(1)(A)(ii) (brandishing a firearm during a crime of violence), and 2, between April 20, 2025 and April 25, 2025, including:

    a. Historical GPS data and other location information;

    b. Information and data related to any connected devices, including cellular telephones, iPads or other electronic devices;

    c. Stored electronic data, information, images, and related digital storage, and/or vehicle diagnostic data from electronic systems within the Vehicle, including, but not limited to:

        i. unique device identifiers;
        ii. media files;
        iii. call logs;
        iv. contacts;
        v. SMS;
        vi. Bluetooth connections;
        vii. USB connections;
        viii. voice commands;
        ix. voice recordings;
        x. voice calling;
        xi. web browser history;
        xii. Wi-Fi connections;

 xiii. speech recognition;

 xiv. time updates;

 xv. track logs;

 xvi. traction events;

 xvii. traffic updates;

 xviii. stop/start log;

 xix. GPS warnings;

 xx. hard acceleration;

 xxi. hard braking;

 xxii. light status;

 xxiii. odometer reading;

 xxiv. gear shifts;

 xxv. historical navigation data;

 xxvi. historical speed data;

 xxvii. historical event data; and

 xxviii. data streaming services and related content.

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means   ☑ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
the dark blue 2018 Dodge Charger Hellcat SRT )   Case No.   25-mj-1034
bearing VIN number 2C3CDXL96JH272235 )
)
)

**WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ____Eastern____ District of ____Pennsylvania____
*(identify the person or describe the property to be searched and give its location)*:
See attachment A, which is incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
See Attachment B, which is incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before ____May 30, 2025____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ____United States Magistrate Judge on Duty____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   ____5-16-2025 at 2:50pm____    /s/Craig M. Straw
*Judge's signature*

City and state:   ____Philadelphia, Pennsylvania____    Honorable Craig M. Straw, U.S. Magistrate Judge
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  25-mj-1034 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|
| <br>I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br><br>Date: _____                                              _____<br>*Executing officer's signature*<br><br>                                                                                       _____<br>*Printed name and title* |